# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3576

_____

Monte A. Murray; Jane Murray,　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Plaintiffs - Appellants,　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　　*　District Court for the Western
　　　　　　　　　　　　　　　　　*　District of Missouri.
American Family Mutual Insurance　*
Company,　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Defendant - Appellee.　*

_____

Submitted: May 11, 2005
Filed: November 17, 2005

_____

Before LOKEN, Chief Judge, BEAM and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Monte and Jane Murray brought this action against American Family Mutual Insurance Company ("American Family") for failure to provide insurance benefits, breach of contract, and failure to procure insurance. The district court[1] granted summary judgment to American Family and the Murrays now appeal. We affirm in part and reverse in part.

_____

[1] The Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

I.    Facts

The facts underlying this lawsuit are largely undisputed.  On December 15, 2000, the car in which the Murrays were riding collided with a car driven by Linda Hohnbaum.  Mr. Murray suffered serious injuries, and Mrs. Murray suffered damages as a result of her husband's injuries.

At the time of the accident, the Murrays were insured by American Family through six automobile policies, one for each vehicle owned by the Murrays, including the vehicle involved in the collision.  All six of the Murrays' insurance policies included uninsured motorist coverage of $100,000 per person and $300,000 per accident.  Four of the six policies also included underinsured motorist coverage of $100,000 per person and $300,000 per accident.  The Murrays also had a personal umbrella policy that provided liability coverage of $1,000,000, but it did not contain uninsured nor underinsured motorist coverage.

The vehicle Hohnbaum was driving at the time of the accident was a rental car owned by National Car Rental Financing, LP ("National Car Rental").  When Hohnbaum rented the vehicle, she declined liability coverage through National Car Rental.  At the time of the accident, Hohnbaum was insured by Allstate Insurance Company ("Allstate") with an automobile insurance policy issued in Florida.  The policy included $10,000 liability coverage that insured Hohnbaum, regardless of whether she owned the vehicle she was driving.

The Murrays brought an action against Hohnbaum in the Circuit Court of Johnson County, Missouri, on January 16, 2001.  After a bench trial, the court found Hohnbaum 100% liable for the accident and awarded damages of $1,606,889.54 to Mr. Murray and $160,690.11 to Mrs. Murray, including prejudgment interest. Following the judgment, Allstate paid the Murrays $10,000.

National Car Rental was self-insured at the time of the accident.  On September 4, 2001, the Murrays' attorney sent a letter to National Car Rental's attorney, stating, in part:

> It is my understanding that you represent National Car Rental and that your client takes the position that there is no liability insurance or self-insurance available through your client for the motor vehicle wreck of December 15, 2000.  Is that correct? . . .  This letter is to advise that my clients will settle with National Car Rental for their injury claim and loss of services for $15,000.[2]

On September 15, 2001, National Car Rental's attorney faxed a brief letter to the Murrays' attorney stating that he "need[ed] clarification of your demand."  On September 17, 2001, the Murrays' attorney responded by writing:

> I acknowledge receipt of your fax of September 15, 2001.  Apparently my letter of September 4, 2001, has caused confusion.  Accordingly, I am hereby withdrawing the offer to settle stated in my letter of September 4, 2001. . . .  As I understand it, Allstate takes the position that National Car Rental under Missouri law is responsible for $15,000

_____

[2] Unlike some states, Missouri does not generally impose vicarious liability on a vehicle owner for the negligence of another person operating the vehicle.  See Chandler v. New Moon Homes, Inc., 418 S.W.2d 130, 135 (Mo. 1967) (en banc) ("The owner can only be made liable for the negligent use of a motor vehicle, whether commercial or pleasure, by another upon some application of the principle of respondeat superior.").  However, Missouri does require all vehicle owners to carry a minimum of $25,000 in insurance that covers any person "using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles . . . ." Mo. Rev. Stat. § 303.190.  As a self-insurer, National Car Rental was responsible for $15,000 of the judgment against Hohnbaum–the statutory minimum insurance level of $25,000 minus the $10,000 liability policy Hohnbaum had through Allstate.

which with Allstate's $10,000 arguably satisfies Missouri minimum liability requirements. Do you agree? Please send me a letter setting forth National Car Rental's position. . . . I thereafter will make a formal offer.

A senior claims adjuster subsequently authorized National Car Rental's attorney "to pay the $15,000 demanded due to the fact that the $15,000, when added to the $10,000 to be paid by Allstate, would satisfy the $25,000 minimum liability coverage limit required by the State of Missouri."

On November 13, 2001, National Car Rental filed for Chapter 11 bankruptcy in Delaware. However, the bankruptcy court approved the proposed payment of $15,000 to the Murrays. The Murrays never accepted the offer from National Car Rental.

On March 29, 2002, the Murrays filed suit against American Family in the Circuit Court of Johnson County, Missouri. The Murrays sought payment of uninsured motorist benefits, or, in the alternative, payment of underinsured motorist benefits. The Murrays also sought damages for breach of contract and failure to procure insurance related to the umbrella policy issued to them by American Family.

A.     Policy Language - Uninsured Motorists Coverage

The Murrays' uninsured motorist coverage stated, in all capitals, "Uninsured motorists – bodily injury only $100,000 each person $300,000 each accident." The policy also stated:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle.

Later in the section, the policies defined an "uninsured motor vehicle":

Uninsured motor vehicle means a motor vehicle which is:

* * *

b.       Insured at the time of the accident by a liability bond or policy with bodily injury liability limits below the minimum required by the financial responsibility law of the state in which your insured car is principally garaged.

* * *

d.       Insured by a bodily injury liability bond or policy at the time of the accident but the company denies coverage or is or becomes insolvent within two years from the date of the accident.

Uninsured motor vehicle, however, does not mean a vehicle:
a.       Owned by or furnished or available for the regular use of you or any resident of your household.
b.       Owned or operated by a self-insurer as considered by any financial responsibility law, motor carrier law, or similar law.

Missouri law requires that all automobile insurance issued within the state include uninsured motorist coverage. <u>Harris v. Shelter Mut. Ins. Co.</u>, 141 S.W.3d 56, 62 (Mo. Ct. App. 2004) (citing Mo. Rev. Stat. § 379.203).

B.      Policy Language - Underinsured Motorists Coverage

Four of the Murrays' policies included underinsured motorist coverage. These policies stated, in all capitals, "Underinsured Motorist Coverage – bodily injury only $100,000 each person $300,000 each accident." The policy later explained:

We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an

underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle.

The policies defined an underinsured motor vehicle:

Underinsured motor vehicle means a motor vehicle which is insured by the liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of the liability of this underinsured motorists coverage.
Underinsured motor vehicle, however, does not mean a vehicle:
a.     Insured under the Liability coverage of this policy.
b.     Insured at the time of the accident by a liability bond or policy with bodily injury liability limits below the minimum specified by the financial responsibility law of the state in which your insured car is principally garaged.
c.     Owned by or furnished or available for the regular use of you or a relative.
d.     Owned or operated by a governmental unit or agency.
e.     Owned or operated by a self-insurer as considered by any financial responsibility law, motor carrier law, or similar law.
f.     Which is insured by a bodily injury liability bond or policy at the time of the accident, but the bonding or insuring company denies coverage or is or becomes insolvent.

II.    Standard of Review

We review a grant of summary judgment de novo, using the same standard as the district court. Jackson v. Ark. Dep't of Educ., Vocational & Technical Educ. Div., 272 F.3d 1020, 1025 (8th Cir. 2001). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

III.    Analysis

A.      Uninsured Motorists Coverage

The Murrays make various arguments in support of their contention that the vehicle Hohnbaum was driving was an uninsured vehicle as defined by their American Family policies, and that they deserve payment under this coverage. We take each argument in turn.

1.      Amount of Coverage

The Murrays contend that the vehicle Hohnbaum was driving lacked the minimum level of coverage required in Missouri and was, therefore, an "uninsured vehicle." As stated above, the American Family policies defined an "uninsured vehicle" as a vehicle "insured at the time of the accident by a liability bond or policy with bodily injury limits below the minimum required by the financial responsibility law of the state in which your car is principally garaged." The Murrays principally garaged their cars in Missouri, and the minimum liability coverage limit required by Missouri was $25,000. The Murrays contend that the Hohnbaum vehicle was insured for only $10,000 under Hohnbaum's automobile insurance policy, and thus the car was insured at a level below Missouri's minimum.

We disagree. In addition to the $10,000 personal liability coverage, the vehicle was also insured by National Car Rental as a self-insurer. Under Missouri law, a self-insurer is obligated to insure a vehicle in at least the minimum amounts required by Missouri law. Mo. Rev. Stat. § 303.160.1(4); Quick v. Nat'l Auto Credit, 65 F.3d 741, 745 (8th Cir. 1995) ("self-insurer must promise to pay the same judgments in the same amounts as an insurer would be obligated to pay"). Because National Car Rental was a self-insurer, it was by definition responsible to pay the minimum amount required by Missouri law, up to $25,000. Because National Car Rental was

responsible for this amount, the vehicle was not insured below the minimum required by Missouri.

### 2. Denial of Coverage

The Murrays next argue that the vehicle Hohnbaum was driving qualifies as an "uninsured vehicle" because National Car Rental denied coverage. The American Family policies consider a vehicle "uninsured" if the vehicle is insured, but, "at the time of the accident . . . the [insuring] company denies coverage." The Murrays contend that National Car Rental denied coverage in an April 10, 2001, letter from a claims representative in which the representative stated:

> National is not accepting primary liability coverage for Ms. Hohnbaum for this accident. . . . Ms. Hohnbaum opted to decline liability protection through National Car Rental. . . . We have confirmed that Ms. Hohnbaum does have liability coverage for this accident, and therefore, National does not have coverage.

In this letter, National Car Rental said that it was not the primary insurer of the vehicle. National Car Rental claimed that Ms. Hohnbaum's personal liability insurance company was primarily responsible, while National Car Rental's responsibility was secondary. In the letter, National Car Rental also stated that it was a self-insurer. When read as a whole, the purpose of the letter is clear: National Car Rental was refusing primary liability coverage for the vehicle, not denying coverage in total. Consistent with this position, National Car Rental subsequently offered a $15,000 settlement to the Murrays, which they refused.

### 3. Insolvency

The Murrays also contend that the vehicle at issue was an "uninsured vehicle" because National Car Rental became insolvent within two years of the accident. The

American Family policies state that when an insurer "becomes insolvent within two years from the date of the accident" the vehicle qualifies as an uninsured vehicle. The Murrays assert that because National Car Rental filed for bankruptcy within two years of the accident, it was insolvent and the vehicle was uninsured.

We find this argument unpersuasive. The evidence shows that National Car Rental's assets were greater than its liabilities at the time it filed bankruptcy and that National Car Rental was able to pay its debts as they became due. Thus, under at least two definitions of "insolvent," National Car Rental did not qualify. See Mo. Rev. Stat. §400.1-201(23) ("A person is 'insolvent' who either has ceased to pay his or her debts in the ordinary course of business or cannot pay his or her debts as they become due or is insolvent within the meaning of the federal bankruptcy law."); 11 U.S.C. §101 (32)(A) (an entity is "insolvent" according to the U.S. Bankruptcy Code when its debts are greater than the value of the entity's property at fair value).

Further, National Car Rental made a $15,000 settlement offer before declaring bankruptcy. We have trouble determining the relevance of the bankruptcy because, if the Murrays had accepted the offer, the matter could have been settled before National Car Rental declared bankruptcy. The bankruptcy court approved the $15,000 payment during the bankruptcy proceedings, so the bankruptcy had no effect on the money the Murrays could have received.

### 4.    Public Policy

Because we find that the vehicle at issue was not an "uninsured vehicle" under the American Family policies' definitions, we need not address the Murrays' argument that the clause which omits self-insured vehicles from the definition of an "uninsured vehicle" is void as against public policy. Even if this clause were stricken, the Murrays would still not be entitled to coverage under this provision.

B. Underinsured Motorists Coverage

As stated earlier, the American Family policies that included underinsured motorist coverage defined an underinsured vehicle as "a motor vehicle which is insured by the liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of the liability of this underinsured motorists coverage." In this case, the vehicle was insured for a maximum of $25,000. The amount of the underinsured motorist coverage was $100,000 per person and $300,000 per accident.

The policies also state that an "[u]nderinsured motor vehicle, however, does not mean a vehicle . . . [o]wned or operated by a self-insurer as considered by any financial responsibility law, motor carrier law, or similar law." The vehicle Hohnbaum was driving was owned by National Car Rental, a certified self-insurer in the state of Missouri. The vehicle was also insured at limits less than the limits of liability under the Murrays' underinsured motorist policies. The Murrays argue that since the vehicle Hohnbaum was driving fits both the description of a vehicle that is underinsured and the description of a vehicle that is not underinsured, the policy is ambiguous. We also note that, in this case, the car was underinsured by Hohnbaum's personal insurance company in addition to being owned by a self-insurer, a situation not contemplated by the policies' definitions.

"When interpreting an insurance policy, this court is to give the policy a reasonable construction and interpret the policy 'so as to afford rather than defeat coverage.'" JAM Inc. v. Nautilus Ins. Co., 128 S.W.3d 879, 893 (Mo. Ct. App. 2004) (quoting Farm Bureau Town & Country Ins. of Mo. v. Hilderbrand, 926 S.W.2d 944, 947 (Mo. Ct. App. 1996)). "If a contract promises something in one point and takes it away in another, there is a resultant ambiguity, and any ambiguity or doubt as to meaning is construed against the insurance company." Macon v. Farmers Ins. Co., 791 S.W.2d 437, 438 (Mo. Ct. App. 1990) (internal citation omitted). "Policy

provisions designed to restrict, limit or impose exceptions or exemptions on insurance coverage will be strictly construed against the insurer." Farm Bureau, 926 S.W.2d at 947.

The court below ultimately declined to determine whether the Murrays should collect under the underinsured motorist provisions of their policies because it found the Murrays failed to meet a prerequisite of coverage by declining the $15,000 offer from National Car Rental. The Murrays argue that this finding should have been precluded by a stipulation between the parties that "[p]laintiffs have performed and complied with all terms precedent concerning their American Family insurance policies as related to their claims against American Family and the judgment against Linda Hohnbaum." American Family has not refuted this contention on appeal. Accordingly, we will address whether the Murrays can collect under their underinsured motorist policies.

The Magistrate Judge below seemed to agree with the Murrays' arguments that the ambiguity in the policy as it relates to underinsured motorists requires American Family to provide coverage. The court stated:

> The Court believes that the Murrays present a compelling argument in favor of a fatal ambiguity—it simply makes no sense to sell insureds insurance that provides protection in the event they are involved in an accident with an individual with less than $100,000 insurance and then turn around and nullify that underinsurance protection simply because the other individual is a qualified self-insurer.

We agree with the court below that interpreting the contract to nullify coverage in this situation would be an unreasonable interpretation. The ambiguity in the policies is construed in favor of the Murrays, and underinsured motorist coverage applies.

-11-

C.    Stacking

Because this Court finds that the Murrays are entitled to coverage under their four policies with underinsured motorist provisions, the Court will consider whether the Murrays are entitled to "stack" the $100,000 of coverage provided by each policy. Although the Magistrate Judge below did not reach this issue, it was raised in Appellants' Motion for Summary Judgment and is an issue of law that this Court has the power to decide. See Hawkeye Nat'l Life Ins. Co. v. Avis Indus. Corp., 122 F.3d 490, 496 (8th Cir. 1997).

Although American Family argues that a UIM endorsement attached to the four policies prevents stacking, the Murrays contend that this provision is rendered ambiguous by another part of the policy and thus must be construed against the insurer to allow stacking.

The "Limits of Liability" portion of the UIM endorsement states:

**We** will pay no more than these maximums no matter how many vehicles are described in the declarations, **insured persons**, claims, claimants or policies or vehicles are involved in the accident.

The provision allegedly rendering the above provision ambiguous is found in the "Other Insurance" clause in the policy:

If there is other similar insurance on a loss covered by this endorsement, we will pay our share according to this policy's portion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

The Missouri Court of Appeals has considered an American Family policy with similar provisions. Clark v. Am. Family Mut. Ins. Co., 92 S.W.3d 198 (Mo. Ct. App.

2002). It found that the provisions created an ambiguity and thus allowed stacking.[3] Id. at 203-05. Although Clark is persuasive authority, we are not bound by it for two reasons. Lancaster v. Am. and Foreign Ins. Co., 272 F.3d 1059, 1062 (8th Cir. 2001) ("We are not bound by decisions of intermediate appellate courts, although they do provide persuasive authority, and we follow them when they are the best evidence of state law."). First, it is not certain that the Missouri Supreme Court would have ruled the same way as the appellate court on the specific facts of Clark. Second, we need not determine whether an insurance policy is ambiguous based solely on the two provisions contrasted in Clark because the Murrays' policies contain an additional provision that clarifies American Family's total liability.

> Part VI of the policy, titled General Provisions, states:
>
> Two or More Cars Insured. The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy.[4]

The Illinois Court of Appeals reviewed American Family policies that contained such a provision and found:

---

[3] The exact language of the "other insurance" provision in Clark is:

> In the event there is other like or similar insurance applicable to a loss covered by this endorsement, this company shall not be liable for more than the proportion which this endorsement bears to the total of all applicable limits. However, *any insurance provided under this endorsement for a person insured while occupying a non-owned vehicle is excess of any other similar insurance*.

[4] If the policy at issue in Clark contained a similar "multiple cars" provision it was not addressed by the Court.

-13-

The "two or more cars insured" provision clearly covers situations where two or more cars belonging to the same insured are covered by policies issued by [the insurance company]. It unambiguously provides that in that case [the insurance company]'s total liability will not exceed the highest liability under any one policy. Read in this context, the other insurance clause refers only to a situation where a different policy issued by a different company applies. If this provision were intended to refer to other policies issued by [the insurance company], there would be no need to refer to a proportionate share; the [insurance company]'s proportionate share would always be 100%. Moreover, reading the other insurance clause in this manner would render the anti-stacking provision meaningless. The other insurance clause would always "trump" the antistacking provision rendering it nugatory. Each clause applies to a different situation, and the antistacking clause is simply not ambiguous.

Am. Family Mut. Ins. Co. v. Martin, 728 N.E.2d 115, 118 (Ill. Ct. App. 2000).

The Martin Court's interpretation of the policy is consistent with the principle that "construction or interpretation of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible [to] another construction which gives effect to all its provisions and is consistent with the general intent." Dent Phelps R-III School Dist. v. Hartford Fire Ins. Co., 870 S.W.2d 915, 920 (Mo. Ct. App. 1994).

We find that even if the "Other Insurance" provision could be deemed ambiguous on its own, its meaning is clear when considered in combination with the separate section titled "Limits of Liability" and the general provision describing the impact of having two or more cars covered by American Family policies. Accordingly, we find that the limitations on liability are enforceable and that the Murrays may not stack the underinsured motorist coverage of multiple policies.

D.    Other Claims

The Murrays also brought breach of contract and failure to procure insurance claims, arguing they had been verbally advised by American Family's agents that their umbrella policy provided uninsured motorist and underinsured motorist coverage. The Magistrate Judge dismissed these claims, finding that even if the umbrella policy had contained such endorsements the Murrays would not be entitled to coverage because Hohnbaum was not an uninsured motorist and because the Murrays failed to meet the prerequisites for an underinsured motorist claim.

Because we find that the Murrays are entitled to underinsured motorist coverage for the reasons discussed in Part B, and because the grant of summary judgment on the claims for breach of contract and failure to procure insurance was explicitly based on the assumption that the Murrays were ineligible for such coverage, we also reverse the grant of summary judgment on the claims for breach of contract and failure to procure insurance. We offer no opinion on the merits of these two claims or the defenses asserted by American Family.

IV.    Conclusion

For the foregoing reasons, we affirm the finding of the lower court regarding the uninsured motorist coverage, but reverse the finding regarding the underinsured motorist coverage.  We find that the Murrays are entitled to recovery under the underinsured motorist coverage and that stacking does not apply. We further reverse the grant of summary judgment on the breach of contract and failure to procure insurance claims.

_____