# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3452

_____

Estate of Buford L. Anderson,         *
        *
        Plaintiff–Appellant,     *
        *    Appeal from the United States
    v.          *    District Court for the Western
        *    District of Missouri.
Safeco Insurance Company of Illinois,   *
        *
        Defendant–Appellee.    *

_____

Submitted: April 15, 2009
Filed: May 29, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

The Estate of Buford L. Anderson (the "Estate") filed Missouri state-law claims for breach of contract and vexatious refusal to pay against Safeco Insurance Company of Illinois ("Safeco"). The district court[1] granted summary judgment in favor of Safeco, and the Estate appeals. We affirm.

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

I.

Buford Anderson was riding in a car driven by his ex-wife, Janice Anderson, when flood waters swept the car off of a private drive. Mr. Anderson was thrown from the vehicle and ultimately died. At the time of the incident, the vehicle Ms. Anderson was driving was insured by Sagamore Insurance Company ("Sagamore"). The Estate sent a letter to Sagamore seeking to recover damages under the policy and stating that Ms. Anderson was at fault for the accident. Sagamore denied the claim, stating "that the main contributing factor" to the accident was "poor repairs to the driveway" and that "the contractor that repaired the driveway [was] the liable party." Sagamore did not deny that Ms. Anderson's policy was in full force and effect at the time of the accident or that the accident was the type of risk against which the policy generally insured. Rather, Sagamore disputed that Ms. Anderson was at fault for the accident as required to trigger liability under the policy.

At the time, pursuant to Missouri law, Mr. Anderson had an auto-insurance policy with Safeco that included uninsured-motorist coverage. See Mo. Rev. Stat. § 379.203. After receiving Sagamore's letter denying "payment," the Estate filed a claim with Safeco. It submitted Sagamore's response as evidence that Safeco was now responsible for payment under Mr. Anderson's uninsured-motorist policy provisions.

The Safeco policy, in relevant part, provided:

A. [Safeco] will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

    1. Sustained by the insured; and

    2. Caused by an accident.

. . . .

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

> 1. To which no bodily injury liability bond or policy applies at the time of the accident. . . . [or]
>
> 4. To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
> > a. denies coverage . . . .

Safeco denied coverage on March 27, 2007, finding that the Sagamore "letter clearly indicate[d] the host vehicle was insured at the time of this loss" and that the Estate had failed to present sufficient documentation that the death "was the result of an auto accident caused by an uninsured motor vehicle." Safeco cited to Part C.1 of its insurance policy. The Estate responded to Safeco's denial of coverage on April 9, 2007, by asserting Safeco's liability under Part C.4 of the policy. The Estate claimed that Part C.4(a) "specifically provides that an 'uninsured motor vehicle' includes, as being within coverage, a tortfeasor whom has liability insurance, but the underwriter of which denies liability." Safeco refused payment, and the Estate then filed suit for breach of contract and vexatious refusal to pay.

## II.

"We review a grant of summary judgment de novo, using the same standard as the district court." Murray v. Am. Family Mut. Ins. Co., 429 F.3d 757, 762 (8th Cir. 2005). The Estate contends that Ms. Anderson's vehicle was an "uninsured motor vehicle" within the meaning of the Safeco policy. Sagamore did not dispute the fact that Ms. Anderson was covered by its policy; it denied payment because it contested her liability for the accident. Nevertheless, the Estate argues that Sagamore's denial of liability is, in effect, a denial of "coverage" under Part C.4(a) of the Safeco policy. Safeco counters that the definition of "coverage" in Part C.4(a) does not include instances in which an insurer denies that the insured was at fault and refuses payment

-3-

for a claim on a liability-related basis. We agree with Safeco and find the Estate's argument unavailing.

The policy does not specifically define the term "coverage." "When interpreting language of an insurance policy that is not defined," Missouri law instructs us to "give a term its ordinary meaning unless it plainly appears that a technical meaning was intended." Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co., 62 S.W.3d 633, 638 (Mo. Ct. App. 2001) (citing Martin v. U.S. Fid. and Guar. Co., 996 S.W.2d 506, 508 (Mo. 1999) (en banc)).

We agree with the district court's conclusion that it would be "unreasonable in the context of uninsured motorist insurance to define 'coverage' to include a denial by the liability insurer of the insured's fault in the accident." To allow for such a definition would conflate "coverage" with "liability" when the two are not synonymous. See Black's Law Dictionary (8th ed. 2004) (defining "coverage" as "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy," and "liability" as "[t]he quality or state of being legally obligated or accountable"). Several courts have noted this distinction in pointing out that "coverage" relates to whether the policy was intended to apply to a particular claim, whereas "liability" addresses the viability of the claim on the facts. See Clark v. Prudential Prop. & Cas. Ins. Co., 66 P.3d 242, 245 (Idaho 2003) (denying uninsured-motorist coverage when the insurer did not deny coverage but denied liability, concluding that "[c]overage relates to whether [the insured] has insurance to cover the accident, and liability relates to whether [the insured] was at fault, thus triggering the insurer's obligation to pay"); Noel v. Metro. Prop. & Liab. Ins. Co., 672 N.E.2d 119, 121 (Mass. App. Ct. 1996) ("There is a distinction between a denial of coverage by an insurer and denial of a claim on the ground that its insured is not legally responsible."); Page v. Ins. Co. of N. Am., 64 Cal. Rptr. 89, 94 (Cal. Ct. App. 1967) ("'Coverage' and 'claim' are by no means synonymous . . . ."); cf. Stotts v. Progressive Classic Ins. Co., 118 S.W.3d 655, 663 (Mo. Ct. App. 2003) ("[T]he uninsured motorist provisions . . . expressly provide[] that a motor vehicle is

-4-

considered uninsured where 'no bodily injury liability bond or policy applies at the time of the accident.' . . . [I]t is clear and unambiguous that if *any* liability policy provided coverage for the . . . vehicle at the time of the accident, it was not uninsured for purposes of the uninsured motorist coverage . . . ." (emphasis added)). Because Sagamore denied payment on the basis that the insured, Ms. Anderson, was not at fault but did not dispute that the accident was generally covered by the policy, we find that there was no denial of "coverage" within the meaning of Safeco's definition of "uninsured motor vehicle." Safeco thus had no obligation to pay the Estate for its claim.

The Estate further argues that Safeco is estopped from arguing that Ms. Anderson did not meet the definition of "uninsured motor vehicle" under Part C.4(a) of the Safeco policy because Safeco failed to reference this provision in its March 27, 2007, letter denying coverage. We also find this argument without merit. Safeco properly informed the Estate that it did not believe that the accident involved an "uninsured motor vehicle" within the meaning of Part C because Ms. Anderson had an insurance policy in place. Safeco was not required to anticipate the Estate's erroneous argument that it was asserting liability specifically under Part C.4 because the definition of "coverage" encompassed a tortfeasor with liability insurance but whose underwriter denied liability in that particular instance. This creative use of estoppel is simply an incorrect application of the law, and, as Safeco notes, "[w]aiver and estoppel operate, when applicable, to preserve rights already acquired . . . and not to create new rights, new causes of action." Associated Indem. Corp. v. Miller-Campbell Co., 596 S.W.2d 383, 389 (Mo. 1980) (en banc) (quotation omitted). Even assuming, then, that Safeco erred in failing to inform the Estate that it was denying coverage specifically under Part C.4(a), its failure to raise this defense in its denial letter does not change the meaning of "coverage" in the policy so as to allow the Estate to prevail.

Finally, because the Estate has neither established that uninsured-motorist coverage exists nor alleged that Safeco engaged in inappropriate tactics when seeking

to avoid payment, it cannot establish Safeco's liability for vexatious refusal to pay. See Cedar Hill Hardware and Const. Supply, Inc. v. Ins. Corp. of Hannover, 563 F.3d 329, 351 (8th Cir. 2009) ("[This court was] unable to locate any Missouri cases in which an award based on a vexatious refusal . . . was unaccompanied by an underlying finding of coverage," but noting dicta that may provide for recovery when the insurer's attitude is "recalcitrant" (citing Dewitt v. Am. Family Mut. Ins. Co., 667 S.W.2d 700, 710 (Mo. 1984))); Stotts, 118 S.W.3d at 661 (setting forth the elements of a vexatious-refusal-to-pay claim, which includes a showing that the claimed loss was a covered loss under the policy).  The district court thus did not err in granting summary judgment in favor of Safeco.

                                                    III.

        Having considered all of the claims presented, we affirm the judgment of the district court.

                         _____

-6-