# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 13, 2010

Lyle W. Cayce
Clerk

No. 10-10042

KENNETH MCQUINNIE,

Plaintiff–Appellant

v.

AMERICAN HOME ASSURANCE COMPANY,

Defendant–Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-cv-00920-B

Before STEWART, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Kenneth McQuinnie appeals the district court's grant of summary judgment in favor of American Home Assurance Co. ("American") and its denial of his cross-motion for summary judgment. The district court held that American was not contractually bound to pay McQuinnie "underinsured" benefits under the Business Auto Policy (the "Policy") held by McQuinnie's employer after McQuinnie was injured in a car accident with Anand Prasad Sapkota. Sapkota drove a rented vehicle owned by Enterprise Leasing

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10042

("Enterprise"), an undisputed "self-insurer" under the Texas Motor Vehicle Safety Responsibility Act. The Policy explicitly excludes vehicles "owned or operated" by self-insurers from the "uninsured" category.

On appeal, McQuinnie argues that the self-insurer exclusion in the Policy (1) creates a "fatal ambiguity" and (2) conflicts with Texas law. Because the Policy contains no ambiguity and does not contravene any Texas statutory provision, we affirm the district court's grant of summary judgment in favor of American.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2007, McQuinnie sustained damages in an accident between his vehicle and a rental car driven by Sapkota. Enterprise owned the car Sapkota drove. At the time of the accident, McQuinnie was covered by the Policy, which his employer purchased from American. McQuinnie and Sapkota's insurance company reached a settlement of $50,000, the limit of Sapkota's personal insurance policy.

Alleging that his damages exceeded $50,000, McQuinnie filed a claim with American, seeking benefits under the "uninsured/underinsured" provisions of the Policy. In relevant part, the Policy provides that American "will pay damages which an insured is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury sustained by an insured, or property damage caused by an accident." (emphasis added). The Policy also provides definitions specific to uninsured/underinsured coverage:

F.   ADDITIONAL DEFINITIONS

The following are added to the DEFINITIONS section and have special meaning for UNINSURED/UNDERINSURED MOTORISTS INSURANCE . . .

6.   "Uninsured motor vehicle" means a land motor vehicle or trailer of any type: . . .

2

No. 10-10042

> d.    Which is an *underinsured motor vehicle*. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit of liability either:
>
> > (1)    is not enough to pay the full amount the covered insured is legally entitled to recover; or
> >
> > (2)    has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered insured is legally entitled to recover as damages.

(emphasis added). Finally, the Policy provides a list of exceptions, including the following: "'uninsured motor vehicle' does not include any *vehicle . . . [o]wned or operated* by a self-insurer under any applicable motor vehicle law." (emphasis added).

American denied McQuinnie's claim because Enterprise is a self-insurer under the Texas Motor Vehicle Safety Responsibility Act and therefore falls within the Policy exception for self-insured owners or operators. McQuinnie subsequently filed this suit against American in state court seeking to recover benefits from American. American removed the case to federal court and filed a motion for summary judgment, relying on the self-insurer exception. McQuinnie filed a cross motion for summary judgment and cited 49 U.S.C. § 30106, which provides that:

> (a) In general.—An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> > (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> >
> > (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

No. 10-10042

McQuinnie used § 30106 to bolster his argument that the self-insurer exception only applies when the insured is legally entitled to recover from the self-insurer, and because federal law prevented any recovery from Enterprise, he should be permitted to recover from American, despite the self-insurer exception.

The district court granted American's motion for summary judgment, characterizing McQuinnie's position as "a truly novel argument unsupported by the case authority." The district court found that the Policy unambiguously defined the term "uninsured motor vehicle" and included examples of vehicles that are, and are not, included. Because the Policy excluded "any vehicles owned or operated by a self-insurer under any applicable motor vehicle law," and the parties did not dispute that Enterprise is a self-insurer, the district court found that Enterprise's vehicle was "expressly excluded" from coverage. Finding that "[n]othing in the written language employed by the drafters of the Policy suggests that they intended that there be an exception for instances in which the insured cannot legally recover against the self-insurer," the district court granted summary judgment in favor of American and denied it as to McQuinnie. McQuinnie timely appealed.

## II. ANALYSIS

### A.    Standard of Review

We review "the district court's grant of summary judgment *de novo*, applying the same standard as the district court." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228–29 (5th Cir. 2010) (citing *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 270 (5th Cir. 2008)). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The district court's interpretation of an insurance contract is a question of law that we . . . review de novo." *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons*

4

No. 10-10042

*Trucking, Inc.*, 307 F.3d 362, 365 (5th Cir. 2002) (citation omitted). "If the court finds no ambiguity, the court's duty is to enforce the policy according to its plain meaning." *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984))

## B.    Sapkota Did Not Drive an Uninsured Motor Vehicle

### 1.    American's Policy Is Not Ambiguous

Although McQuinnie argues that a "fatal ambiguity" exists in the Policy, he fails to direct us to the provisions he finds ambiguous. Having examined the Policy, we find it unambiguous. "Reliance on defined terms in insurance policies to construe those contracts is necessary to determine the intent of the parties and integral to the application of basic principles of contract interpretation to insurance policies." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003) (citations omitted). The Policy provides that American "will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle." The Policy further defines "uninsured motor vehicle" as an "underinsured motor vehicle." In other words, the Policy makes it clear that an "underinsured motor vehicle" is encompassed by the definition of "uninsured motor vehicle."

The Policy also provides that an "'uninsured motor vehicle' does not include any vehicle . . . owned or operated by a self-insurer under any applicable motor vehicle law." Because the Policy does not consider a vehicle "uninsured"—and thus provides no coverage—if it is owned or operated by a "self-insurer," and an "underinsured vehicle" is a type of "uninsured vehicle," it necessarily follows that if an owner or operator of an underinsured vehicle is a

No. 10-10042

self-insurer, then the insured is not entitled to recover damages under the Policy. We therefore find the Policy unambiguous.[1]

### 2.    American's Policy Is Valid under Texas Law

#### i.    Texas Law Considers the Insured Nature of the Vehicle, Not the Tortfeasor

McQuinnie argues that Texas law considers the insurance status of the tortfeasor, not the insurance status of the vehicle involved in an accident, and thus Enterprise's self-insurer status should not defeat coverage. McQuinnie, however, misinterprets Texas's Insurance Code ("TIC"). TIC § 1952.101 states that "'uninsured or underinsured motorist coverage' means the provisions of an automobile liability insurance policy . . . that protects insureds who are legally entitled to recover from owners or operators of uninsured or underinsured *motor vehicles*." (emphasis added). The TIC provisions addressing the terms "uninsured"[2] and "underinsured"[3] also explicitly reference *vehicles*. No relevant statute makes mention of an uninsured or underinsured *tortfeasor*.

---

[1] McQuinnie's reliance on *Murray v. American Family Mutual Insurance Co.*, 429 F.3d 757 (8th Cir. 2005), for his argument that we should construe the Policy's alleged ambiguity in his favor is misplaced. Not only did *Murray* interpret Missouri law rather than Texas law, *see id.* at 761, the *Murray* court addressed a Policy with a clear and undisputed ambiguity. *See id.* at 764 ("The [plaintiffs] argue that since the vehicle [the tortfeasor] was driving fits both the description of a vehicle that is underinsured and the description of a vehicle that is not underinsured, the policy is ambiguous."). In this case, we find no ambiguity in the Policy at issue.

[2] *See* TIC § 1952.102 ("For purposes of the coverage required by this subchapter, 'uninsured motor vehicle,' subject to the terms of the coverage, is considered to include an insured *motor vehicle* as to which the insurer providing liability insurance is unable because of insolvency to make payment with respect to the legal liability of the insured within the limits specified in the insurance.") (emphasis added).

[3] *See* TIC § 1952.103 ("For purposes of the coverage required by this subchapter, 'underinsured motor vehicle' means an insured *motor vehicle* on which there is collectible liability insurance coverage with limits of liability for the owner or operator that were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.") (emphasis added).

In support of his position, McQuinnie argues that the Texas legislature's purpose behind passing TIC § 1952.103's predecessor was to protect the people of Texas from financially irresponsible *drivers*. He also cites *Infante v. Texas Farmers Insurance Co.*, which states:

> The purpose of underinsured motorist coverage is to provide an individual injured by a motorist carrying insurance in an amount less than that required by law, or otherwise reduced by payments to other claimants in the same accident, to an amount less than required by law, with no less coverage than the injured party would receive had the *tort feasor* been fully insured or fully covered in relation to plaintiffs' underinsured motorist coverage under the law.

640 S.W.2d 321, 323 (Tex. App—Beaumont 1982, writ ref'd n.r.e.) (citation omitted) (emphasis added). Finally, McQuinnie cites *Stracener v. United Services Automobile Association*, 777 S.W.2d 378, 380 (Tex. 1989), asserting that it stands for the proposition that a *motorist* is underinsured if his or her liability insurance will not suffice to pay for the injured party's actual damages.

McQuinnie's support does not overcome the clear language of the three relevant TIC provisions, which refer to the insured nature of the motor vehicle rather than the tortfeasor. We therefore reject McQuinnie's argument that, under Texas law, we must look to the insured nature of the tortfeasor rather than the insured nature of the vehicle.

### ii.    The Policy Is Valid under Texas Law

TIC § 1952.103 states that "an underinsured motor vehicle is an insured motor vehicle on which there is collectible liability insurance coverage" that does not fully cover a victim's damages. McQuinnie contends that, under federal law, Enterprise had no "collectible liability insurance coverage" on the vehicle Sapkota drove, and therefore the district court erred by considering Enterprise, rather than only Sapkota. Thus, McQuinnie concludes, "the 'self-insurer' exclusion is inapplicable to defeat coverage for underinsured motorist benefits," because Sapkota was not a self-insurer and because Enterprise cannot be liable.

Texas law mandates that any insurer offering automobile coverage must provide "uninsured or underinsured motorist coverage in the policy or supplemental to the policy." TIC § 1952.101(b). An "underinsured motor vehicle" is defined by Texas law as

> an insured motor vehicle on which there is collectible liability insurance coverage with limits of liability for the owner or operator that were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

TIC § 1952.103. Texas law explicitly allows certain exclusions from its mandate that automobile insurers provide uninsured motor vehicle coverage: "[t]he commissioner may . . . allow 'uninsured motor vehicle' to be defined or . . . define 'uninsured motor vehicle,' to exclude certain motor vehicles whose operators are in fact uninsured." TIC § 1952.102. McQuinnie makes no allegation that the commissioner did not approve American's self-insurer exception.

As the vehicle's "operator," Sapkota had "collectible liability insurance coverage," which means that under Texas law, the car Sapkota drove was underinsured. Under the Policy, a car that is "underinsured" is considered "uninsured," and nothing cited by McQuinnie suggests that an insurance company may not define "underinsured motor vehicle" as a sub-category of "uninsured motor vehicle" and include exclusions that apply to both. Under the Policy, a motor vehicle is not "uninsured" if it is "*owned or operated* by a self-insurer under any applicable motor vehicle law." (emphasis added). It is undisputed that Enterprise owned the car Sapkota drove and undisputed that Enterprise is a self-insurer. We thus hold that the application of American's self-insurer exception does not violate Texas law, and it therefore bars McQuinnie from recovery under the Policy. Accordingly, we affirm the district

No. 10-10042

court's grant of summary judgment in favor of American and its denial as to McQuinnie.

### III. CONCLUSION

The Policy contains no ambiguity.  Additionally, the Policy does not contravene any Texas law.  We therefore affirm the district court's grant of summary judgment in favor of American and its denial as to McQuinnie.

AFFIRMED.