Lynn BETHKE, Individually and as
Personal Representative of the
Estate of Kathryn A. Bethke and
Andrew Bethke,
Plaintiffs-Appellants-Petitioners,

v.

AUTO-OWNERS INSURANCE COMPANY,
Defendant-Respondent.

Supreme Court

*No. 2010AP3153. Oral argument October 9, 2012.
—Decided February 1, 2013.*

2013 WI 16

(Also reported in 825 N.W.2d 482.)

For the plaintiffs-appellants-petitioners, there were briefs filed by *William P. Te Winkle* and *Stephanie E. Waldon,* and *Rohde Dales, LLP,* Sheboygan, and oral argument by *William P. Te Winkle.*

For the defendant-respondent, there were briefs filed by *Richard E. Schmidt, Allen M. Ratkowski* and *Thomas T. Calkins,* and *Piper & Schmidt,* Milwaukee, and oral argument by *Allen M. Ratkowski.*

An amicus curiae brief was filed by *William C. Gleisner, III,* Hartland, on behalf of the Wisconsin Association for Justice, and oral argument by *William C. Gleisner, III.*

¶ 1. ANN WALSH BRADLEY, J.  The petitioners, Lynn and Andrew Bethke (collectively, the Bethkes), seek review of an unpublished decision of the court of appeals affirming the circuit court's grant of a declaratory judgment to Auto-Owners Insurance Company.[1] The Bethkes seek underinsured motorist coverage (UIM) under a policy issued by Owners as a result of an automobile accident caused by an allegedly negligent driver of a rental vehicle owned by Avis Rent-a-Car (Avis). The Bethkes' mother, Kathryn Bethke, suffered fatal injuries in the accident and Andrew was seriously injured. Avis, as a car rental company, was statutorily required to pay $50,000 as a result of the accident.

---

[1] *Bethke v. Auto-Owners Ins. Co.,* No. 2010AP3153, unpublished slip op. (Ct. App. Nov. 2, 2011), affirming the circuit court for Sheboygan County, L. Edward Stengel, J., presiding.

Although the court caption indicates that "Auto-Owners Insurance Company" is the name of the defendant-respondent, the briefs submitted in this matter indicate that its correct name is "Owners Insurance Company." Throughout this opinion, we will refer to the defendant-respondent merely as "Owners."

536

¶ 2. Owners denied the Bethkes' UIM claim and asserted that because Avis is a self-insurer, the rental vehicle is not an "underinsured automobile" under the terms of the policy. In response, the Bethkes argue that the term "self-insurer" in the policy is ambiguous as applied to the facts of this case and must be construed in favor of coverage. Moreover, the Bethkes argue that excluding UIM coverage under the facts of this case leads to an absurd result.

¶ 3. We conclude that as applied, the policy term "self-insurer" is ambiguous because it is unclear whether a reasonable insured would understand that a car rental company which is statutorily liable under Wis. Stat. § 344.51 is a "self-insurer" under the policy. Consistent with the canons of construction and case law, when the policy language relates to coverage and is ambiguous, we interpret the policy in favor of the insured to afford coverage. We further conclude that even if the term "self-insurer" appears to be unambiguous, interpreting it to exclude self-insured rental vehicles from coverage leads to an absurd result here. Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings.

I

¶ 4. The facts of this case are undisputed.

¶ 5. On July 19, 2007, Kathryn was operating a motor vehicle in an eastbound direction on County Highway C in the Town of Sheboygan Falls and Andrew, her son, was a passenger in the vehicle. Frederick Goddard, a resident of the United Kingdom, was driving an Avis rental vehicle in the opposite direction and crossed the center line, striking Kathryn's vehicle in a

537

head-on collision. Both Kathryn and Goddard died and Andrew suffered serious injuries.[2]

¶ 6.   Goddard did not possess any insurance that provided coverage for the accident. Avis, however, paid the Bethkes a limited amount because it is a car rental company, which is statutorily liable under Wis. Stat. § 344.51(1m) (2005–06)[3] for $25,000 each to Kathryn's estate and to Andrew. Accordingly, Avis tendered to the Bethkes a payment of $50,000.

¶ 7.   After receiving the $50,000 payment from Avis, the Bethkes claimed underinsured motorist (UIM) benefits under an automobile insurance policy issued to Kathryn by Owners. The declaration page of the policy states that Kathryn purchased UIM coverage in excess of the statutory minimum that was in effect at the

---

[2] Lynn Bethke was not involved in the accident. She appears in this case individually and as representative of Kathryn's estate. Andrew Bethke and Lynn Bethke are Kathryn's only children and her sole surviving heirs.

[3] All subsequent references to the Wisconsin Statutes refer to the 2005–06 version unless otherwise indicated. Wisconsin Stat. § 344.51(1m) states the following:

**Financial responsibility for domestic rented or leased vehicles. . . .(1m)** No lessor or rental company may for compensation rent or lease any motor vehicle unless there is filed with the department on a form prescribed by the department a certificate for a good and sufficient bond or policy of insurance issued by an insurer authorized to do an automobile liability insurance or surety business in this state. The certificate shall provide that the insurer which issued it will be liable for damages caused by the negligent operation of the motor vehicle in the amounts set forth in s. 344.01(2)(d). No lessor or rental company complying with this subsection, and no lessor or rental company entering into or acquiring an interest in any contract for the rental or leasing of a motor vehicle for which any other lessor or rental company has complied with this subsection, is liable for damages caused by the negligent operation of the motor vehicle by another person.

time.[4] She purchased coverage in the amount of $500,000 per person and $500,000 per accident. The declaration page of the policy describes the UIM coverage as follows:

Underinsured Motorist $500,000 person/$500,000 occurrence

The Underinsured Motorist limit is subject to allowable offsets.

Please refer to form 79326.

¶ 8. The UIM endorsement (Form 79326) in the policy states that Owners will cover "compensatory damages [the Bethkes are] entitled to recover from the owner or operator of an underinsured automobile for bodily injury." The endorsement defines an "underinsured automobile" as:

an automobile to which a bodily injury liability bond or liability insurance policy applies at the time of the occurrence:

(1) in at least the minimum amounts required by the Financial Responsibility Law in the state where your automobile is normally garaged; and

(2) the limits of liability provided are less than the amount of compensatory damages the injured person is legally entitled to recover for bodily injury.

¶ 9. Immediately below that definition, the policy lists certain types of vehicles that do not fall within the definition of "underinsured automobile." They are listed as follows:

---

[4] If an individual elected to buy UIM coverage, the minimum amount of coverage required by statute was $50,000 per person and $100,000 per accident. Wis. Stat. § 632.32(4m)(d).

Underinsured automobile does not include an automobile:

(1) owned or leased by, furnished to or available for the regular use of you or any relative;

(2) *owned or operated by a self-insurer under any automobile law*;

(3) owned by any governmental unit or agency;

(4) located for use as a residence or premises;

(5) that is designed for use primarily off public roads except while actually on public roads; or

(6) that is an uninsured automobile. . . .

(Emphasis added.)

¶ 10.   Owners rejected the Bethkes' claim for UIM benefits because it determined that the Avis rental vehicle was not an "underinsured automobile" as that term is defined in the policy. Prior to the accident, Avis obtained a Wisconsin Safety Responsibility Self-Insurance Certificate (a "certificate of self-insurance") from the Wisconsin Department of Transportation in order to be qualified to self-insure Goddard's rental vehicle. The certificate states that Avis "has qualified as a self-insurer under the Wisconsin 'Motor Vehicle Safety Responsibility Act' chapter 344 Wisconsin Statutes." Owners argued that because Avis self-insured the rental vehicle, there was no coverage under the policy.

¶ 11.   When Owners refused to provide UIM coverage, the Bethkes commenced an action alleging a survivor's action and claims of wrongful death, bad faith, and personal injuries to Andrew. In its answer, Owners denied that the policy provided any UIM coverage and alleged a counterclaim requesting a declaratory judgment on the question of UIM coverage.

¶ 12. Following the pleadings, the Bethkes and Owners each filed separate motions requesting a declaratory judgment regarding Kathryn's UIM coverage. The Bethkes requested in their motion a payment of $450,000 after the payment from Avis was applied. Conversely, Owners asked the circuit court to determine that there was no UIM coverage.

¶ 13. In a written decision, the circuit court granted Owners' motion for a declaratory judgment and denied the Bethkes' competing motion. The circuit court determined that Avis was unambiguously a "self-insurer." Therefore, because the Avis vehicle did not fall within the policy definition of "underinsured automobile," the circuit court concluded that the policy provided no UIM coverage.

¶ 14. The Bethkes appealed, arguing that the term "self-insurer" was ambiguous because it is unclear whether a statutorily liable car rental company is considered a self-insurer under the policy. The court of appeals rejected the Bethkes' ambiguity argument and instead adopted Owners' argument that the policy "excludes a self-insured vehicle defined under any automobile law."[5]

---

[5] The court of appeals did not directly identify which law it meant. However, earlier in the opinion, the court of appeals cited Wis. Stat. § 344.16, which governs who may be qualified as self-insurers. Wisconsin Stat. § 344.16 states the following:

> **Requirements as to self-insurers. (1)** Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the secretary as provided in sub. (2).
>
> **(2)** The secretary may, upon the application of such a person, issue a certificate of self-insurance when satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.

## II

■

¶ 15. In this case, we are called upon to review the circuit court's decision to grant a declaratory judgment to Owners. The grant or denial of a declaratory judgment is addressed to the circuit court's discretion. *Olson v. Farrar*, 2012 WI 3, ¶ 24, 338 Wis. 2d 215, 809 N.W.2d 1.

■

¶ 16. Our task is to determine whether the circuit court erroneously exercised its discretion when it concluded that under the facts of this case the terms of the policy unambiguously excluded UIM coverage. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, ¶ 11, 586 N.W.2d 863 (1998). A circuit court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon the facts of the record. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶ 32, 324 Wis. 2d 703, 783 N.W.2d 294.

■

¶ 17. An interpretation of an insurance policy presents a question of law that we review independent of the determinations rendered by the circuit court and court of appeals. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857.

## III

■

¶ 18. The Bethkes argue that the term "self-insurer" in the policy is ambiguous as applied to the

---

**(3)** Upon not less than 5 days' notice and a hearing pursuant to such notice, the secretary may upon reasonable grounds cancel a certificate of self-insurance. Failure to pay any judgment within 30 days after such judgment has become final constitutes a reasonable ground for cancellation of a certificate of self-insurance.

facts of this case because it is unclear whether a reasonable insured would understand that a car rental company which is statutorily liable under Wis. Stat. § 344.51 is a "self-insurer" under the policy.[6] Moreover, the Bethkes argue that interpreting the policy to exclude UIM coverage under the facts of this case leads to an absurd result. To evaluate the Bethkes' arguments, we begin by considering both the type of coverage that Kathryn bought when she purchased the insurance policy and the rules of construction established by our precedent that are to guide an ambiguity analysis.

■■

¶ 19.    Kathryn elected to purchase a UIM endorsement with her insurance policy. UIM coverage provides additional coverage to insured automobile accident victims when a liable party has inadequate means of payment. 24 Eric Mills Holmes, *Appleman on Insurance 2d* § 147.1 (2004). As this court has repeatedly stated, "underinsured motorist coverage provides a predetermined, fixed level of coverage." *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 42, 293 Wis. 2d 123, 717 N.W.2d 258 (citing *Welin v. American Family Mut. Ins. Co.*, 2006 WI 81, 292 Wis. 2d 73, ¶¶ 46, 49–53, 717 N.W.2d 690). It puts the insureds in the same position they would have occupied had the liable party's insurance limits been the same as the underinsured motorist limits purchased by the insureds. *State Farm Mut. Ins.*

---

[6] In addition to their argument that the term "self-insurer" is ambiguous, the Bethkes argue that the self-insured provision operates as an impermissible reducing clause under *Welin v. American Family Mut. Ins. Co.*, 2006 WI 81, 292 Wis. 2d 73, 717 N.W.2d 690 and that the self-insured provision is contrary to public policy. Because we determine that the term "self-insurer" is ambiguous when applied to the facts of this case, we need not reach the Bethkes' other arguments.

*Co. v. Gillette,* 2002 WI 31, ¶ 44, 251 Wis. 2d 561, 641 N.W.2d 662 (citation omitted). UIM coverage seeks to "compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries." *Id.,* ¶ 45. (citation omitted).

¶ 20.  Having examined the type of insurance that Kathryn purchased, we consider next the rules of construction established by our precedent to guide an ambiguity analysis. If the policy language is unambiguous, we interpret the policy language to accord with the plain meaning of its provisions. *Acuity v. Bagadia,* 2008 WI 62, ¶ 13, 310 Wis. 2d 197, 750 N.W.2d 817. We must give the words used in the policy their common and ordinary meaning, which is "what the reasonable person in the position of the insured would have understood the words to mean." Arnold P. Anderson, *Wisconsin Insurance Law* § 1.1(C) (4th ed. 1998) (citations omitted); *see also State Farm Mut. Auto. Ins. Co. v. Langridge,* 2004 WI 113, ¶ 14, 275 Wis. 2d 35, 683 N.W.2d 75.

¶ 21.  Ambiguity may exist in the language of an insurance policy either on its face or as applied to the extrinsic facts to which it refers.[7] *Washington v. Washington,* 2000 WI 47, ¶ 18, 234 Wis. 2d 689, 611 N.W.2d 261; *see also Froedtert Memorial Lutheran Hosp., Inc. v. National States Ins. Co.,* 2009 WI 33, ¶ 34, 317 Wis. 2d 54, 765 N.W.2d 251 ("the language of a[n insurance] policy may not be entirely clear as

---

[7] Owners concedes in its response to an amicus brief submitted by the Wisconsin Association for Justice that "statutes and policy provisions could potentially be ambiguous given a certain set of circumstances," but denies that the self-insured provision is ambiguous when applied to these facts.

applied to a given set of facts"). Words in a policy that are clear in most contexts may become ambiguous when applied to specific facts because "words cannot anticipate every possible fact situation." *Teschendorf*, 293 Wis. 2d 123, ¶ 20 (describing statutory ambiguity).

¶ 22.  We interpret undefined words and phrases of an insurance policy as they would be understood by a reasonable insured. *Acuity*, 310 Wis. 2d 197, ¶ 13. If the undefined language is ambiguous, we will construe it in favor of the insured to afford coverage. *Id.*; *Folkman*, 264 Wis. 2d 617, ¶ 13.

¶ 23.  With the above explanations in mind, we turn now to evaluate the Bethkes' arguments. The Bethkes contend that the term "self-insurer" in Kathryn's UIM coverage is ambiguous because it is unclear what constitutes a "self-insurer" under the policy. The Bethkes further argue that a reasonable insured would not understand that a statutorily liable car rental company is a "self-insurer" under the policy.

¶ 24.  The term "self-insurance" often gives rise to interpretation issues. As one popular treatise on insurance law puts it, "[t]he term 'self-insurance' is somewhat ambiguous."[8] 1A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 10:1 (3d ed. 2011). It explains that the term is one "of colloquial currency rather than

_____

[8] Broadly stated, a self-insurer generally elects to take on the risk of paying claims by itself rather than purchasing a separate policy from an insurance company. Robert E. Keeton & Alan I. Widiss, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices* 13 (1988). An entity of sufficient size such as a corporation or governmental agency might elect to handle the risk of becoming liable to an injured party by setting aside assets. *Id.* The entity then uses its own assets to pay claims. *Id.*

of precise legal meaning." *Id.* We therefore examine next what the term "self-insurer" means in this policy.

¶ 25.  Sometimes a statutory definition of a term provides the meaning of the use of that term in a policy. Thus, we look to the statutes governing automobile insurance coverage. However, the term "self-insurer" is not defined in Wisconsin's statutes.

¶ 26.  In examining the policy, the term "self-insurer" is likewise undefined there. An examination of the declarations page of the policy that provides the insured $500,000 of UIM coverage sheds no light on our quest. Although the policy in total makes four references to a "self-insurer," none of those references defines the term.

¶ 27.  The only qualifying phrase in the policy that arguably lends any assistance in defining the term "self-insurer" is the phrase that appears to direct the reader to search for self-insurers "under any automobile law." The term "law" in "any automobile law" arguably directs the reader to laws related to automobiles that govern a "self-insurer." However, even assuming that the phrase "under any automobile law" modifies the term "self-insurer," it is unclear whether a car rental company that is statutorily liable under Wis. Stat. § 344.51 is a "self-insurer" under the policy.

¶ 28.  We identify two statutes that potentially inform what a "self-insurer" under any "automobile law" means, Wis. Stat. §§ 344.51 and 344.16. Both of those statutes are part of Wisconsin's financial responsibility law.[9] We turn to examine whether they provide any assistance in our search for a definition of a "self-insurer."

---

[9] The financial responsibility law is codified at Chapter 344 of the Wisconsin statutes.

¶ 29. Avis is a liable party to this accident not because it is self-insured, but because it is a car rental company. Avis is statutorily liable under Wis. Stat. § 344.51(1m) for damages caused by the negligent operation of its rented motor vehicle by another person. Wisconsin Stat. § 344.51(1m) requires Avis to file with the Department of Transportation "a certificate for a good and sufficient bond or policy of insurance."[10] The certificate must provide that Avis' insurer will be liable for certain minimal amounts that arise from accidents caused by the negligent operation of a rented motor vehicle by another person. *Id.* The minimum amount of insurance coverage that Avis must maintain under Wis. Stat. § 344.51(1m) is $25,000 per person and $50,000 per occurrence.[11] Wis. Stat. § 344.01(2)(d).

¶ 30. Wisconsin Stat. § 344.51(1m) further provides that if a car rental company complies with the insurance requirement in the statute, it is not liable beyond the insurance liability limits for damages caused by the negligent operation of a rented motor vehicle by another person. Even if a car rental company fails to comply with the insurance requirement, the statute makes it directly liable for only $25,000 per person and $50,000 per accident. Wis. Stat. §§ 344.51(2); 344.01(2)(d). Although Wis. Stat. § 344.51 makes a car

---

[10] Although the statute refers to a "policy of insurance," a certificate of self-insurance is sufficient to meet the insurance requirement of Wis. Stat. § 344.51. *Boatright v. Spiewak*, 214 Wis. 2d 507, 515, 570 N.W.2d 897 (Ct. App. 1997).

[11] Neither Wis. Stat. § 344.51 nor Wis. Stat. § 344.01(2)(d) prohibit car rental companies from acquiring liability insurance beyond the minimum amounts and providing additional compensation to injured accident victims. However, as the court of appeals has noted, there is little incentive in the statutory scheme for any car rental company to insure for more than the minimum amount. *See Boatright*, 214 Wis. 2d 507, 519–20.

rental company liable for damages caused by the negligent operation of its rented motor vehicle by another person, it also expressly limits its exposure for that liability.

¶ 31. The legislature's purpose in enacting Wis. Stat. § 344.51 is therefore expressed in the operation of the statute. Wisconsin Stat. § 344.51 represents a trade-off for car rental companies. On one hand, the statute requires a minimal payment to accident victims for damages caused by the negligent operation of a rented motor vehicle by another person. On the other hand, Wis. Stat. § 344.51 shields car rental companies from liability for those damages above the minimal statutory requirements. Because it is subject to Wis. Stat. § 344.51, Avis was statutorily liable in the amount of $50,000 to the Bethkes regardless of whether it was insured or self-insured.

¶ 32. Here, Avis possessed a certificate of self-insurance under Wis. Stat. § 344.16. That statute allows "any person in whose name more than 25 motor vehicles are registered" to qualify as a self-insurer by obtaining a certificate of self-insurance. Wis. Stat. § 344.16(1). The Department of Transportation is charged with the responsibility to determine who is qualified to self-insure their vehicles and to issue certificates of self-insurance. Wis. Stat. § 344.16(2).

¶ 33. Wisconsin Stat. § 344.16(2) provides that the Department of Transportation may qualify an individual to self-insure their vehicles only when it is "satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person." Pursuant to Department of Transportation regulations, an applicant is considered to be "possessed of the ability to pay judgments" under

548

Wis. Stat. § 344.16(2) if the applicant has abundant financial resources at their disposal:

> . . .the [applicant must have] unencumbered assets of at least $60,000 times the square root of the total number of motor vehicles owned by the [applicant] and operated on Wisconsin highways, [must be] paying creditors as the [applicant's] debts become due, and [must] not have any judgment, fine or forfeiture that has remained unpaid more than 30 days.

Wis. Admin. Code § Trans 100.16(4)(c) (Oct., 2005).[12]

¶ 34. Evidence of the ability to pay judgments must be provided in the form of audited financial statements or on a United States securities and exchange commission form 10K filing. *Id.* at § Trans 100.16(4)(c). Applicants may obtain a certificate of self-insurance if they have financial resources sufficient to prove to the Department of Transportation that they can pay judgments. Wis. Stat. § 344.16(1). Because self-insurance certificates must be renewed every year, applicants must annually submit a new application and financial statement. Wis. Admin. Code § Trans 100.16(3).

¶ 35. By enacting Wis. Stat. § 344.16 and charging the Department of Transportation with the responsibility to determine that applicants for a certificate of self-insurance are financially capable of paying judgments, the legislature sought to ensure that self-insurers can fully satisfy judgments against them by injured accident victims. The financial requirements imposed by the Department of Transportation give effect to that purpose by ensuring that anyone who

---

[12] All regulations cited in this opinion are the regulations that were in effect at the time Avis possessed the certificate of self-insurance at issue in this case, unless otherwise indicated.

chooses to self-insure has a significant amount of financial resources available to pay judgments to accident victims.

¶ 36. The Department of Transportation's administration of Wis. Stat. §§ 344.16 further indicates that the statute's purpose is to ensure that self-insurers can fully satisfy judgments. Department of Transportation regulations require a self-insurer under Wis. Stat. § 344.16 to use a specific application form when seeking approval to self-insure vehicles. The regulations identify that form as form "MV3069." Wis. Admin. Code § Trans 100.16(1) (Oct., 2005). The instructions on form MV3069 state that it is "specifically not valid for the requirements of s.344.51 and s.344.52 Wis. Stats."[13] The Department of Transportation treats car rental companies whose liability is limited under Wis. Stat. § 344.51 differently than self-insurers whose liability is not limited by the statute.

¶ 37. By enacting both Wis. Stat. §§ 344.16 and 344.51, the legislature has set forth two statutes whose purposes collide. A self-insured car rental company cannot at the same time enjoy limited liability and be expected to fully satisfy judgments. There is a disconnect because one statute makes Avis statutorily liable for a minimal amount of $25,000 per person and $50,000 per accident while the other statute seeks to ensure that Avis has the financial resources to fully satisfy judgments against it. The purposes of the statutes do not add up when they are combined in a self-insured car rental company like Avis.

---

[13] Although form MV3069 is not in the record, we take judicial notice of the form because it is an easily accessible form authored by a state agency. *See* Wis. Stat. § 902.01; *Wisconsin Med. Soc'y v. Morgan*, 2010 WI 94, ¶ 18 n.7, 328 Wis. 2d 469, 787 N.W.2d 22.

¶ 38. The disconnect between the two statutes is further illustrated by the circumstances giving rise to Avis' liability under Wis. Stat. § 344.51(1m). Avis is statutorily liable for a minimal amount in order to pay damages caused by the negligent operation of a rented motor vehicle by another person. Wis. Stat. § 344.51(1m). However, Avis would be expected to fully pay a judgment if Avis' negligence caused the damages.

¶ 39. It is unclear whether a reasonable insured would understand that a car rental company whose liability is limited by Wis. Stat. § 344.51 is a "self-insurer" under the policy. The generalized requirements to obtain a certificate of self-insurance are quite different from the protection of underinsured motorist coverage. Wisconsin Stat. § 344.51 places liability on the shoulders of a car rental company regardless of whether it is self-insured.

¶ 40. A reasonable insured would understand their UIM coverage generally provides additional coverage to insured automobile accident victims when a liable party has inadequate means of payment. 24 Eric Mills Holmes, *Appleman on Insurance 2d* § 147.1 (2004). Here, Avis made an inadequate payment yet Owners failed to provide additional coverage.

¶ 41. A reasonable insured would understand their UIM coverage should provide "a predetermined, fixed level of coverage" when all sources of payment have been combined. *See Teschendorf*, 293 Wis. 2d 123, ¶ 42 (citing *Welin*, 292 Wis. 2d 73, ¶¶ 46, 49–53). When all sources of payment are combined, the Bethkes have not received the predetermined, fixed level of coverage that Kathryn purchased, which is $500,000. Avis is the only source of payment and it is statutorily liable for only $50,000.

¶ 42. A reasonable insured would expect that the UIM insurance she purchased would put her in the same position she would have occupied had the liable party's insurance limits been the same as the underinsured motorist limits purchased by her. *Gillette*, 251 Wis. 2d 561, ¶ 44. Here, Avis' payment does not put the Bethkes in that same position. The liability limits were only $50,000 even though Kathryn purchased $500,000 of UIM coverage.

¶ 43. A reasonable insured would expect UIM coverage when "the third party's liability limits are not adequate to fully compensate the victim for his or her injuries." *Id.*, ¶ 45. Here, Avis has statutory liability limits that are inadequate to compensate the Bethkes for their injuries yet Owners has provided no additional coverage.

¶ 44. UIM coverage is meant to provide coverage up to the policy limit where those who are liable cannot fully compensate the insured. A car rental company that is statutorily liable is not meant to provide compensation to injured accident victims beyond a minimal amount. In light of those purposes, a reasonable insured would expect their UIM coverage to fill in the gap between the statutory liability of a car rental company and their coverage limit absent a clear exclusion limiting coverage. For the reasons we discuss above, the exclusion on which Owners relies is unclear. Therefore, because it is unclear whether a reasonable insured would understand that a car rental company who is statutorily liable under Wis. Stat. § 344.51 is a "self-insurer," we conclude that the term "self-insurer" is ambiguous under these facts.

¶ 45. Even if we concluded that the policy appeared to clearly and unambiguously exclude the Avis rental vehicle from coverage, we would still be unable to

interpret it to exclude UIM coverage under these facts because such a construction leads to an absurd result. Its application to these unique facts simply makes no sense.

¶ 46. Kathryn took every reasonable action that could be expected of her to protect herself under these facts. She elected to purchase $500,000 in UIM coverage when she could have chosen not to buy any. However, if the term "self-insurer" is interpreted to encompass the Avis rental vehicle, it would not matter whether Kathryn bought $1,000,000 or even $5,000,000 in coverage. Her prudent planning against a catastrophic loss like the one suffered by the Bethkes would be nullified.

¶ 47. The absurdity that results from including Avis as a "self-insurer" here is illustrated by Owners' statements regarding why the policy excludes a "self-insurer" in the first place. At oral argument Owners agreed that the main purpose of excluding a "self-insurer" is because "the self-insurer entity has been certified as having plenty of resources." Self-insurers are not covered because Owners expects that the Bethkes will collect a judgment from a self-insurer that fully addresses their damages. Generally that makes sense when applied to an entity that possesses a self-insurance certificate under Wis. Stat. § 344.16 because the statute ensures that it has the financial capacity to pay judgments.

¶ 48. However, that purpose makes no sense when applied to the Avis rental vehicle. Wisconsin Stat. § 344.51(1m) expressly limits the liability of rental car companies whether or not they are self-insured. Owners cannot reasonably expect the Bethkes to collect a judgment that fully addresses their damages from a company whose liability is limited to a minimal amount

by statute. The unique circumstances of this case produce a result that is at odds with the purpose for excluding a "self-insurer."

¶ 49. The absurd result that occurs when the term "self-insured" is applied to the Avis rental vehicle is further illustrated by *Murray v. American Family Mut. Ins. Co.*, 429 F.3d 757 (8th Cir. 2005). Although *Murray* arose under Missouri law, the Eighth Circuit interpreted similar policy language under facts similar to the case before us. *Id.* at 760–62.

¶ 50. In *Murray*, Monte and Jane Murray were riding in a vehicle driven by a third party. *Id.* at 759. At the time of the accident, the Murrays were insured by American Family through six automobile policies, one for each vehicle that they owned. *Id.* Four of the six policies contained UIM coverage in the amount of $100,000 per person and $300,000 per occurrence. *Id.*

¶ 51. The Murrays were riding in a vehicle owned by a car rental company at the time of the accident. *Id.* at 760. The driver of the rental vehicle was insured for $10,000 of liability coverage through her own policy. *Id.* After the accident, the Murrays filed an action against the driver. *Id.* Following a bench trial, the court found the driver 100% liable for the accident and awarded damages of $1,606,889.54 to Monte Murray and $160,690.11 to Jane Murray. *Id.* The driver's insurer paid its $10,000 limit to the Murrays. *Id.*

¶ 52. The Murrays looked to the self-insured rental vehicle company for compensation. *Id.* After some negotiations and a bankruptcy filing by the rental vehicle company, the company paid the Murrays an additional $15,000. *Id.* at 760–61.

¶ 53. The Murrays then filed suit against American Family seeking payment of uninsured and UIM benefits. *Id.* at 761. The Murrays' UIM coverage in all

relevant policies provided that an "underinsured motor vehicle" did not include vehicles "[o]wned or operated by a self-insurer as considered by any financial responsibility law, motor carrier law, or similar law." *Id.* at 761–62.

¶ 54.    The Eighth Circuit determined that "interpreting the contract to nullify coverage in this situation would be an unreasonable interpretation." *Id.* at 765. The *Murray* court approvingly quoted a lower court's statement that the Murrays presented a "compelling argument in favor of a fatal ambiguity." *Id.* at 764. The *Murray* court agreed that "it simply makes no sense to sell insureds insurance that provides protection in the event that they are involved in an accident with an individual with less than $100,000 insurance and then turn around and nullify that underinsurance protection simply because the other individual is a qualified self-insurer." *Id.* at 764–65.

¶ 55.    To apply the policy term "self-insurer" to the Avis rental vehicle is similarly an unreasonable interpretation. It makes no sense for Owners to sell Kathryn $500,000 of UIM coverage excluding a "self-insurer" and to then turn around and apply that policy term to a car rental company who is statutorily liable for a minimal amount not because it is a self-insurer, but because it is a car rental company.

¶ 56.    We decline to adopt an interpretation of the policy that leads to such an absurd result. Just as in *Murray*, the ambiguity in Owners' policy is fatal to its arguments that the policy does not extend coverage to the Avis rental vehicle. *Id.* at 764. To avoid an absurd result, we interpret the policy in favor of the insured. *See Olguin v. Allstate Ins. Co.*, 71 Wis. 2d 160, 165, 237 N.W.2d 694 (1976).

¶ 57.  In sum, we conclude that as applied, the policy term "self-insurer" is ambiguous because it is unclear whether a reasonable insured would understand that a car rental company which *is statutorily* liable under Wis. Stat. § 344.51 is a "self-insurer" under the policy. Consistent with the canons of construction and case law, when the policy language relates to coverage and is ambiguous, we interpret the policy in favor of the insured *to afford coverage.* We further conclude that even if the term "self-insurer" appears to be unambiguous, interpreting it to exclude self-insured rental vehicles from coverage leads to an absurd result here. Accordingly, we reverse the court of appeals and remand *to the circuit court for further proceedings.*

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 58.  SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The majority opinion struggles mightily, but unsuccessfully, in my opinion, to justify awarding funds to the sympathetic innocent victims of an auto accident. Tragically, Kathryn Bethke died. Andrew Bethke was seriously injured. I agree with the majority that a fairer result, and perhaps one more in line with the theoretical goals of Underinsured Motorist Coverage (UIM), is for Ms. Bethke's insurance company to compensate the Bethkes. But that result is not consistent with the policy that Ms. Bethke purchased and that the insurance company issued. As much as my sympathies pull me to the result the majority reaches, I cannot join the majority opinion in rewriting the insurance policy to create coverage where none exists under the plain text of the policy.

¶ 59. Kathryn Bethke bought $500,000 of underinsured motorist coverage for a premium of $7.17 per year. The majority opinion explains (without any basis in the record) that Ms. Bethke took every reasonable action that could be expected of her to protect herself from an underinsured motorist. Majority op., ¶ 46.

¶ 60. The Bethke policy has high coverage limits for underinsured motorist coverage and a low premium. As might be expected under these circumstances, the underinsured motorist provision in this insurance policy contains numerous exceptions and exclusions limiting coverage and recovery under the underinsured motorist provision.

¶ 61. Indeed, the vehicle at issue is an underinsured automobile as defined in the policy.[1] The Bethke policy also includes a lengthy list of automobiles excluded from the definition of an underinsured automobile and thus excluded from underinsured motorist coverage. One exclusion in the Bethke policy provides that an "underinsured automobile does not include an automobile owned or operated by a self-insurer under *any* automobile law"[2] (emphasis added).

---

[1] The Bethke policy provides that "underinsured automobile" means "an automobile to which a bodily injury liability bond or liability insurance policy applies at the time of the occurrence in at least the minimum amounts required by the Financial Responsibility Law in the state where your automobile is normally garaged . . . . Underinsured automobile does not include an automobile . . . owned or operated by a self-insurer under any automobile law . . . ."

The vehicle at issue does not fall within the policy's definition of "uninsured automobile."

[2] This policy exclusion from underinsured coverage is found in the standard personal auto policy. *See* 1 Susan J. Miller, *Miller's Standard Insurance Policies Annotated* 12 (Form PAP) (6th ed. 2012).

¶ 62.   Other underinsured motorist policies may be available for purchase in Wisconsin, may cost more, and may have fewer exclusions than the Bethke policy. Nothing in the record shows that all automobile liability policies available in Wisconsin exclude self-insurers from underinsured motorist coverage.

¶ 63.   As fate would have it, however, the Bethke policy does not cover the eventuality that occurred. Ms. Bethke collided with a rental car owned by Avis Rent-A-Car, a self-insurer under a Wisconsin automobile law, and operated by an uninsured driver who was unable to compensate the Bethkes for the damages inflicted.

¶ 64.   The majority opinion characterizes as ambiguous the policy language declaring that an "underinsured automobile does not include an automobile owned or operated by a self-insurer under *any* automobile law."

¶ 65.   I agree with the circuit court and court of appeals. Both concluded that the exclusion of self-insured vehicles does not function as an impermissible reducing clause and that the policy language excluding "a self-insurer under *any* automobile law" is not ambiguous.

¶ 66.   The policy refers to a self-insurer under *any* automobile law. Wisconsin Stat. § 344.16 is just such an automobile law. It unambiguously grants Avis the opportunity to be a self-insurer under Wisconsin law. Avis has qualified as a self-insurer and has received a Wisconsin certificate of self-insurance. Majority op., ¶ 10. If there is an ambiguity, I have not found it. As I read

Wisconsin Stat. § 632.32(6) includes a list of exclusions that are prohibited in motor vehicle insurance policies. The self-insurance exclusion is not prohibited by Wis. Stat. § 632.32(6) or any other law.

the plain words of the policy (and these plain words are not prohibited by Wis. Stat. § 632.32(6)), the Bethkes cannot recover from their insurance company under the underinsured motorist coverage for damages arising from this auto accident because the vehicle at fault was owned by Avis, a self-insurer under an automobile law. Even though the Bethkes were not fully compensated by the at-fault driver, the underinsured motorist coverage will not provide coverage because the auto accident involved a self-insured vehicle.

¶ 67.   Rather than looking at the plain language of the policy, the majority opinion turns to analyzing the purpose of the statutes governing car rental companies and self-insurers. The statutes do not establish the scope of UIM coverage or impose a definition of a UIM vehicle. Nevertheless, the majority opinion ominously declares that the statutes regarding limited liability, self-insurers, and underinsured motorists are on a collision course: "A self-insured car rental company cannot at the same time enjoy limited liability and be expected to fully satisfy judgments. There is a disconnect because one statute [§ 344.51] makes Avis statutorily liable for a minimum amount . . . while the other statute [§ 344.16] seeks to ensure that Avis has the financial resources to fully satisfy judgments against it." Majority op., ¶ 37.

¶ 68.   There is no collision course. There is no disconnect. The fatal flaw in the majority opinion is that it seems to assume that Avis would be fully liable to Ms. Bethke but for the statutory "limit on liability." This is simply not so. Wisconsin Stat. § 344.51 does not act as a "limit on liability," but rather expands Avis's obligation to compensate an innocent victim; Avis is liable without any proof that it (rather than the driver who rented the vehicle) is at fault.

559

¶ 69. At common law, a car rental company was not liable to an innocent third party for the negligent operation of the driver of its rented car.[3] The statute, Wis. Stat. § 344.51(1m), that imposes liability on the car rental company partially abrogates the common law. The statute requires the car rental company to provide the specified compensation to the victim of a driver who rents its car, causes an injury, and is unable to pay the damages on his or her own.[4] But for the existence of the statute mandating Avis to compensate the injured person in the specified amounts, Ms. Bethke likely would not have recovered a single dollar from Avis in the present case. Avis is a "source of payment" for victims only because the statute requires it to pay compensation, not because Avis is liable under common law principles of tort liability.

¶ 70. The statutory liability applies only to cars that Avis rents to drivers who are negligent, cause injury, and are unable to pay damages.

¶ 71. A car rental company like Avis is nonetheless fully liable for damages that are caused by its own wrongdoing. Thus, Avis may incur liability if, for example, its negligent maintenance of a rented car is a cause of injury. Avis may incur liability if its negligence in renting a car to a negligent driver is a cause of injury. Avis may incur liability if an Avis-owned car is negligently operated by an Avis employee.

---

[3] *City of Milwaukee v. Froelich*, 196 Wis. 444, 445, 219 N.W. 954 (1928); *Boatright v. Spiewak*, 214 Wis. 2d 507, 520–21, 570 N.W.2d 897 (Ct. App. 1997); *Am. Family Mut. Ins. Co. v. Reciprocal Ins. Serv. Exch. Mgmt. Co.*, 111 Wis. 2d 308, 310, 330 N.W.2d 223 (Ct. App. 1983).

[4] Wis. Stat. § 344.51(1m). *See also Am. Family Mut. Ins. Co.*, 111 Wis. 2d at 311.

¶ 72. The majority opinion complains that Avis's "limited liability" contravenes the purpose of the self-insurer exclusion—to enable the self-insured to pay damages against it in full—and asserts that therefore Avis does not fit the definition of a self-insurer.[5] This assertion is wrong. Avis is a self-insurer under the law, whether it is required to provide compensation to an innocent victim for another's wrongdoing or whether it must pay damages when it is liable for its own wrong-doing.

¶ 73. There is no collision course or disconnect in the statutes. The statutes demonstrate a consistent legislative purpose: Car rental companies have statu-tory liability for negligent motorists who rent their cars, cause an injury, and are unable to pay the damages on their own. In the event that the car rental company is liable for its own wrongdoing, the State of Wisconsin is satisfied that it has the financial resources to pay any judgments against it. Whether Avis has statutory liabil-ity for the negligent operation of one of its vehicles by a driver who rented the vehicle or liability for its own wrongdoing, it is a self-insurer under a Wisconsin auto-mobile law.

¶ 74. The majority, in my opinion, should stick to reading the insurance policy and the statutes. The result the majority reaches is not consistent with the policy that Ms. Bethke purchased and that the insurance company issued.

¶ 75. The majority reads the insurance policy based on its theoretical expectation of UIM coverage, and not the expectation of an insured who has read the self-insurer exclusion or the insurance company that issued the policy. The majority reads words into the

[5] Majority op., ¶ 38.

561

insurance policy that are not there. It reads the policy as if it includes the following emphasized language: "Underinsured automobile does not include an automobile owned or operated by a self-insurer under any automobile law *except an automobile law providing that when the self-insurer is a car rental company it has limited statutory liability for a driver's negligent operation of a rental car.*"

¶ 76. The law simply does not allow us to alter policy language to create coverage where none exists.[6]

¶ 77. For the reasons set forth, I dissent.

¶ 78. I am authorized to state that Justice N. PATRICK CROOKS and Justice MICHAEL J. GABLEMAN join this dissent.

---

[6] *Bruchert v. Tokio Marine & Nichido Fire Ins. Co., Ltd.*, 2007 WI App 156, ¶ 12, 303 Wis. 2d 671, 736 N.W.2d 234.