DANIEL KELLY, J.
*98 ¶1 Pallet Central Enterprises, Inc., ("Pallet Central") forged certain delivery tickets and used them to bill Leicht Transfer & Storage Company ("Leicht") for the sale and delivery of pallets that Pallet Central never sold or delivered. This case followed, and in the piece of it we address today, Leicht sought coverage for its losses under the Commercial Crime Insurance Policy issued to it by Hiscox Insurance Company, Inc. ("Hiscox"). Specifically, Leicht asserts that the forged delivery tickets comprise "directions to pay" within the meaning of the "Forgery or Alteration" insuring agreement of the Hiscox policy. We disagree, and so we affirm the court of appeals.[1]
I. BACKGROUND
¶2 Leicht provides warehousing services in the Green Bay area. It uses pallets to assist in the storage and shipment of warehoused items. Between January 2013 and February 2015, Leicht purchased pallets from Pallet Central. The companies followed a standard practice for documenting these transactions for the purpose of inventory control and billing. Part of that standard practice involved Pallet Central's preparation of a delivery ticket describing the shipment, including the type of pallets, the number to be delivered, the delivery date, and the identification number of the trailer conveying them. The delivery ticket would accompany the truck driver making the shipment. Upon delivery, a Leicht employee would verify *99 the shipment and sign the delivery ticket. The truck driver would then return a copy of the delivery ticket to Pallet Central, after which Pallet Central would prepare an invoice package. The *536 package comprised an invoice, a copy of the signed delivery ticket, and a voucher.[2] Pallet Central would then submit the invoice package to Leicht for payment. Leicht would pay the invoice only if the package contained a copy of the signed delivery ticket. Leicht would then bill its customers for, inter alia, the pallets it used in storing and shipping their goods.
¶3 Eventually, Leicht became aware that the number of invoice packages Pallet Central was submitting had dramatically increased. Leicht's internal investigation revealed that many of the delivery tickets bore the apparent signatures of Leicht employees who could not possibly have executed the documents. Ultimately, Leicht concluded that the signatures were forged, and that it had consequently paid Pallet Central for pallets it never received.[3] Leicht says Pallet Central submitted fraudulent invoice packages worth approximately $ 751,000.00, of which it paid approximately $ 505,000.00.
*100 ¶4 Leicht submitted its loss to Hiscox pursuant to the terms of its Commercial Crime Insurance Policy (the "Policy"). The relevant language, found in the "Forgery or Alteration" insuring agreement, states the following:
(1) Checks
We will pay for loss resulting directly from Forgery or alteration of checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises, orders or directions to pay a sum certain in Money that are:
(i) Made or drawn by or drawn upon You; or
(ii) Made or drawn by one acting as Your agent; or that are purported to have been so made or drawn.[4 ]
(Emphasis added.) Hiscox denied coverage, and Leicht sued. It alleged Hiscox breached its contract, and asked the circuit court to declare that the Policy covers its losses from the forged delivery tickets.[5]
¶5 Hiscox moved for summary judgment, arguing that the Policy's "Forgery or Alteration" insuring agreement did not provide coverage because the forged delivery tickets were neither "checks" nor any of the other types of documents identified by the Policy. Hiscox also argued that the forged delivery tickets were not "drawn upon" Leicht, which it said is a *101 prerequisite to coverage. Leicht disagreed. It said the Policy covers the delivery tickets because Pallet Central used them as a means of directing payment. Therefore, it concluded, the Policy covers the delivery tickets as "directions to pay a sum certain in Money."[6] *537 ¶6 The circuit court granted Hiscox's motion, concluding that the Policy's "Forgery or Alteration" insuring agreement did not provide coverage. The court of appeals affirmed, explaining that the Policy "enumerate[s] specific covered instruments, including checks, drafts and promissory notes, and 'similar written promises, orders or directions to pay a sum certain' in money" and that "[t]he delivery tickets Leicht relies upon were not written promises, orders or directions to pay 'similar' to the enumerated documents covered under the polic[y]." Leicht Transfer & Storage Co. v. Pallet Cent. Enter., No. 2016AP2334, unpublished slip op., ¶ 11, 382 Wis. 2d 270, 2018 WL 1972655 (Wis. Ct. App. Apr. 25, 2018) (per curiam). The court of appeals said the forged delivery tickets "were merely evidence of a claim that pallets were delivered by Pallet Central to Leicht." Id., ¶¶ 12-13.
¶7 Leicht's petition for review asserted that the Policy's coverage of "similar written promises, orders or directions to pay a sum certain" is a "recipe for ambiguity" because "[n]othing in the policy alerts the policyholder how or why other forged documents might be similar." We granted Leicht's petition and now hold that the Policy does not afford the coverage Leicht *102 seeks because Pallet Central's delivery tickets are not "written ... directions to pay a sum certain in Money."
II. STANDARD OF REVIEW
¶8 We review the disposition of a motion for summary judgment de novo, applying the same methodology the circuit courts apply. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). While our review is independent from the circuit court and court of appeals, we benefit from their analyses. See Preisler v. Gen. Cas. Ins. Co., 2014 WI 135, ¶ 16, 360 Wis. 2d 129, 857 N.W.2d 136. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2) (2017-18); see also Columbia Propane, L.P. v. Wis. Gas Co., 2003 WI 38, ¶ 11, 261 Wis. 2d 70, 661 N.W.2d 776 (quoting and applying Wis. Stat. § 802.08(2) (2001-02)).
¶9 The interpretation of an insurance policy presents a question of law. Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co., 2016 WI 54, ¶ 12, 369 Wis. 2d 607, 881 N.W.2d 285. We review such questions de novo. Id.
III. ANALYSIS
¶10 The Policy contains three relevant requirements that Leicht must satisfy before it is entitled to coverage for its losses. First, it must demonstrate that *103 a "delivery ticket" is the type of document encompassed by the Policy's insuring agreement. Second, it must show that the delivery tickets were "[m]ade or drawn by or drawn upon [Leicht]; or [m]ade or drawn by one acting as [Leicht's] agent; or that are purported to have been so made or drawn." And third, it must establish that the payments it made to Pallet Central constitute a "loss resulting directly" from the forgery. To evaluate these requirements, we must discern the meaning of the Policy's insuring agreement, and how its terms apply to the facts of this case. *538 ¶11 Our goal in interpreting and applying an insurance policy's terms is the same as it is in addressing any other contract: To "effectuate the intent of the contracting parties." Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶ 19, 311 Wis. 2d 548, 751 N.W.2d 845 (citations omitted). In doing so, we construe insurance contracts "as they would be understood by a reasonable person in the position of the insured[,]" yet we will "not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65 (citations omitted). We will interpret undefined words and phrases as they would be understood by a reasonable insured, Bethke v. Auto-Owners Ins. Co., 2013 WI 16, ¶ 22, 345 Wis. 2d 533, 825 N.W.2d 482, and "[w]e give undefined words and phrases their common and ordinary meaning." Day v. Allstate Indem. Co., 2011 WI 24, ¶ 28, 332 Wis. 2d 571, 798 N.W.2d 199. "If the undefined language is ambiguous, we will construe it in favor of the insured to afford coverage." Bethke, 345 Wis. 2d 533, ¶ 22, 825 N.W.2d 482. A term or *104 phrase is ambiguous only if it is " 'fairly susceptible to more than one reasonable interpretation.' " Wilson Mut. Ins. Co. v. Falk, 2014 WI 136, ¶ 24, 360 Wis. 2d 67, 857 N.W.2d 156 (citation omitted).
¶12 We begin our analysis with Leicht's position that "delivery tickets," when combined with corresponding invoices, are included in the type of documents the Policy covers. The insuring agreement describes covered documents as "checks, drafts, promissory notes, convenience checks, HELOC checks, or similar written promises, orders or directions to pay a sum certain in Money." Because Leicht says the delivery tickets are covered as "directions to pay a sum certain in Money," this part of the inquiry actually involves two steps. First, we must determine whether a delivery ticket is, in fact, a direction to pay a sum certain in money (alone or in conjunction with an invoice). If it is, then we must consider whether it is "similar" to "checks, drafts, promissory notes, convenience checks, [or] HELOC checks." It is a covered document only if it meets both criteria.
¶13 Neither party has suggested the phrase "directions to pay a sum certain in Money" is ambiguous. And as the following analysis will demonstrate, we espy no ambiguity in it either. Therefore, we "interpret the policy according to its plain and ordinary meaning to avoid imposing contract obligations that the parties did not undertake." Frost ex rel. Anderson v. Whitbeck, 2002 WI 129, ¶ 17, 257 Wis. 2d 80, 654 N.W.2d 225. The plain and ordinary meaning of the phrase unmistakably indicates that, by themselves, the delivery tickets are not "directions to pay a sum certain in Money." The documents' most obvious defect in this regard is that they contain no directions to pay. They *105 are, instead, simple statements that Pallet Central delivered a certain type and number of pallets on a particular day. To the extent the delivery tickets contain any directions at all, they are as follows:
[Leicht] [m]ust notify us of any quantity disputes and/or quality matters within 72 hours of delivery or credit will not be issued.
Please use our tickets for DELIVERIES and PLEASE make three (3) copies, one for you, one for the customer and one for the driver. Have the driver fill out the ticket (truck #, trailer # and driver signature). Then PLEASE fax the filled out ticket back to me at [###-###-####].
*539 With respect to payment, they are entirely inert, and contain no motive force whatsoever by which to direct anyone to pay anything.
¶14 The delivery tickets also conspicuously lack any reference to a "sum certain." In fact, they do not reference an amount due, or even a calculation by which one may arrive at an amount due. Indeed, they say nothing about currency, payment, or anything else one might associate with money, much less a "sum certain." Leicht conceded this point at oral argument, and further admitted it would not have paid Pallet Central if it had presented nothing but a delivery ticket. The unavoidable conclusion, therefore, is that a delivery ticket-by itself-is not a direction to pay a sum certain in money.
¶15 Nor does a delivery ticket become a direction to pay when bundled with a corresponding invoice. Leicht acknowledged that an invoice is a request for payment, not a direction to pay. So if the delivery ticket becomes a direction to pay when attached to an invoice, *106 the combination must be capable of making the invoice package greater than the sum of its parts. But Leicht did not explain how combining the two would turn one of them (or both) into a direction to pay a sum certain in money. The best it could offer was this: "Without the signed ticket Pallet Central could not be paid. Indeed, that is why Pallet Central forged those tickets in the first place." That is likely so, and we accept Leicht's reasoning for the purpose of this analysis. But it cannot carry the weight of its argument. Leicht's explanation describes a document evidencing Pallet Central's satisfaction of a condition precedent to payment. Just because the signed delivery ticket is a prerequisite to payment, however, does not transform it (or the combined documents) into a direction to pay a sum certain in money. The delivery ticket does not affect the invoice's nature (it is still a request), and the invoice does not create terms in the delivery ticket that were not there before (it still directs no payment, much less a sum certain). Combined, the documents retain the same characteristics that defined them separately: A request for payment, and proof of delivery. Consequently, the delivery ticket-whether taken on its own terms or in conjunction with an invoice-is not a direction to pay a sum certain in money.
¶16 That, however, does not address Leicht's position in full. A close examination of its arguments reveals that Leicht did not explicitly claim that a delivery ticket is a direction to pay. Instead, it said "the delivery ticket[s] represented a direction to pay," and that "the parties used these delivery tickets to direct payment from Leicht's finance department," and that the "tickets served as a written direction to Leicht's *107 bursar to pay Pallet Central's invoices." That is to say, Leicht asserts that delivery tickets function as a direction to pay.
¶17 The distinction is subtle, but no less real for that. And that distinction helps illustrate why there can be no coverage for the forged delivery tickets. It is a commonplace that what something "is" can differ from the function to which it is put. An object might be a chair, and at times function as a very short ladder. But that does not mean the chair is a ladder. And if an insurance policy insures only against the loss of ladders, the chair owner will be disappointed. Here, the Policy applies to forgery of "directions to pay a sum certain in Money." As discussed above, the delivery tickets are unquestionably not that. Therefore, there can be no coverage unless the Policy applies to writings that are not"directions to pay," but which are nonetheless used for that purpose. We see nothing in the Policy, however, that grants coverage *540 to documents not covered by its terms, but which are used as functional proxies for documents that are covered by its terms. So when Leicht says "the delivery tickets functioned as a direction to make payment, just as the policies required," it is mistaken. The Policy required a direction to pay, not a stand-in for a direction to pay.[7] *108 *
¶18 If we had concluded that the delivery tickets, alone or in conjunction with corresponding invoices, constituted "directions to pay," we then would have needed to consider whether the Policy's insuring agreement covered only those "directions to pay" that are similar to the specifically identified documents (i.e., checks, drafts, promissory notes, convenience checks, or HELOC checks). We also would have needed to determine whether they had been "[m]ade or drawn by or drawn upon" Leicht, or were "[m]ade or drawn by one acting as [Leicht's] agent; or that [were] purported to have been so made or drawn." And finally, we would have needed to determine whether the payments induced by the forged delivery tickets comprised losses "resulting directly from" the forgery. But all of these issues are contingent on having discerned a "direction to pay" in the forged delivery tickets. Because we did not, we have no need to examine these additional *109 issues. Am. Girl, Inc., 268 Wis. 2d 16, ¶ 24, 673 N.W.2d 65 ("If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there."). The Policy's insuring agreement does not encompass the forged delivery tickets, and we may not add coverage for which the parties did not bargain. Id., ¶ 23 (citations omitted) ("[W]e do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium."). Consequently, Leicht's quest for coverage must end.
IV. CONCLUSION
¶19 We conclude that the Policy unambiguously demonstrates that the delivery tickets at issue in this case, either alone or in combination with corresponding invoices, do not qualify as "written ... directions to pay a sum certain in Money." Further, we conclude that the Policy does not provide coverage for forged documents that are not themselves "directions to pay," but which are used as proxies for such documents. Summary judgment for *541 Hiscox was, therefore, appropriate. We affirm the court of appeals.
By the Court. -The decision of the court of appeals is affirmed.
*110 *542 *111 A.W. BRADLEY, J. dissents (opinion filed).

This is a review of an unpublished per curiam opinion of the court of appeals, Leicht Transfer & Storage Co. v. Pallet Cent. Enter., No. 2016AP2334, unpublished slip op., 382 Wis. 2d 270, 2018 WL 1972655 (Wis. Ct. App. Apr. 25, 2018) (per curiam), which affirmed the Brown County Circuit Court, the Honorable Marc A. Hammer, presiding.

Leicht did not describe the voucher, and the sole invoice package in the Record contains only an invoice and delivery ticket. Therefore, our analysis does not rely on the nature or content of the voucher. We have included the invoice package as an appendix to our opinion. We assume this invoice package is representative of all invoice packages submitted by Pallet Central to Leicht (aside from the question of forgery and the absence of the voucher).

Leicht reported its findings to the DePere Police Department. The investigating officer concluded that Leicht had been the victim of theft by use of fraudulent invoices. Whether the delivery tickets at issue actually were forged is not before us, and we express no opinion on that question.

The Policy emphasizes certain words to indicate they are defined terms. We have omitted the emphasis to avoid a suggestion we are assigning particular importance to those words.

Leicht also named two of its other insurers, as well as Pallet Central, as defendants. However, Hiscox is the only defendant currently before the court, and so we do not address claims made against any other party.

To the extent Leicht previously argued that coverage exists under other portions of the Hiscox policy, those arguments are not before this court and we therefore consider only the coverage question presented. See, e.g., A.O. Smith Corp. v. Allstate Ins. Cos., 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

For a similar reason, the dissent's analysis cannot reach Leicht's preferred end. The author says: "Examining the policy language in light of the parties' habitual practice, and consistent with this court's precedent, I arrive at the opposite conclusion." Dissent, ¶22. The insurance policy, of course, does not insure against loss caused by "Forgery or alteration" of Leicht and Pallet Central's "habitual practice." It insures against loss from "Forgery or alteration" of specifically described documents, of which a delivery ticket is not one.
The key explanation the dissent offers for its contrary conclusion is this:
"[I]f it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck." This test suggests that something can be identified by its habitual characteristics, i.e. how it routinely functions.
Id., ¶ 34.
The point of the "duck" exercise is not to equate two things that are not the same. It is to identify what something really is. That is, one does not build an animatronic duck, set it afloat in a puddle with a quack soundtrack, and conclude it is an actual member of the Anatidae family. But that is what the dissent proposes here. Leicht and Pallet Central may have a private understanding that they will act as though the delivery ticket is a direction to pay a sum certain. But that does not mean we (and Hiscox) must conclude it is such a document any more than an ornithologist must conclude the floating fabrication actually is a duck.